Good morning. My name is Thomas Branstrader. I represent Ricardo Hernandez in this court. May it please this court. The original indictment in this case in January 2015 did not charge Mr. Hernandez with conspiracy. It charged Mr. Hernandez with a single count of possession with intent to distribute cocaine. Mr. Hernandez in the subsequent trial was found not guilty of that charge. But in the subsequent trial he faced a superseding indictment that came in December of 15 which charged him with conspiracy with Mr. Urbano to possess and distribute drugs. The evidence came from a Mr. Jorge Sanchez who testified for benefit and who was Mr. Urbano's supplier. Mr. Urbano and Mr. Sanchez made an agreement to purchase a kilo of cocaine September 19, 2013. The evidence from two sources, Mr. Sanchez and my client's own statement was that Mr. Hernandez worked for Mr. Urbano and was charged with going to pick up that package. When we consider Mr. Sanchez's testimony regarding that event, an event that was also surveilled by government agents, it becomes a question as to exactly who picked up that kilo. Mr. Sanchez testified that the meeting occurred at a restaurant. Mr. Urbano was there with his wife, his barber, his wife being Mr. Hernandez's cousin, and Mr. Hernandez. The agent testified that the individuals only numbered three, Urbano, Sanchez, and Hernandez. The agent testified that after waiting, surveilling the restaurant for an hour, the three gentlemen came out, stood between Mr. Sanchez's car, Mr. Urbano's car, Mr. Sanchez seemed to lean into his car, but the agent testified he could not see exactly what happened after that. In a brief conversation, the three individuals left. Mr. Sanchez testified that in the restaurant, he told Mr. Urbano the package is in my car. He further testified that Urbano Urbano told Mr. Hernandez to go get it. Mr. Sanchez never left the restaurant, so he doesn't know who got it, but that was his testimony. The other evidence heard against Mr. Hernandez were a series of phone calls on the 25th and the 26th, and our position is that Mr. Hernandez, at the urging of Mr. Urbano, listened to Mr. Sanchez about details about whether there was any cocaine to be had for Mr. Urbano. The other source of evidence in this case is my client's rambling, incoherent, uncorroborated interview a year later in the FBI building. My client was a 32-year-old man who delivered pizzas and lived with his mother, and that year later, he was rousted out of bed at six o'clock in the morning, barely allowed to dress, handcuffed, and brought down to the FBI building to be interviewed by agents. As his testimony would suggest, he attempted to cooperate. He attempted to talk about things that he obviously didn't know anything about. He talked about picking up boxes from Mr. Sanchez. Mr. Sanchez never talked about picking up boxes, and as Mr. Sanchez testified, there was no box involved in the one delivery in September of 2013. He talked about picking up money from Mr. Urbano. He did have phone conversations with these people, didn't he? Mr. Hernandez did talk on the phone. He did. Our position, if you listen to those things, is that he was reacting. Your client what? Reacting, not giving any direction, not saying, let's meet here, here's how much we're going to pay, this is where the drugs are going to go. What do you mean when you say he reacted? Sanchez would tell him what was going to happen, and he would say, huh, yeah, okay. He never said any prices. He had no customers. He wasn't... Well, why was Sanchez talking to him if he was going to make a deal? Well, he was going to make a deal with the police to arrange the pickup for Mr. Urbano. The pickup of what? Narcotics. Now, the government argues that as Mr. Urbano and Mr. Hernandez are on the same side, I can't talk about any of the relevant factors that this court has found about conspiracy and what's required. But I would ask this court to find that my activity was at the behest of Mr. Urbano to pick up drugs from Mr. Sanchez, and there's one transaction that occurred. And as I've already explained, it's inconsistent. It's just as reasonable to argue that Mr. Hernandez was just merely present when Urbano and Hernandez went out and picked up the package from Mr. Sanchez's car. Sanchez doesn't know who picked up the package. The agent said it was a completely different scenario than what Mr. Sanchez describes. My client had nothing to do with setting the price or setting the quantity, setting the place of where that's going to happen. Did he get a minor role adjustment? He did not, Judge. Why not? Well, our argument that was at post-trial sentencing is that he wasn't responsible for Mr. Urbano and Mr. Sanchez's activities in the drug business. But what I tried to concentrate on is none of the factors that we usually see in these cases existed as it pertained to my client. He had no customers. He didn't set any prices. He didn't initiate anything. He didn't say, let's have two kilos this time instead of one. He went, the one thing, looking at the evidence in the best light for the government, he did one thing. And as the evidence of Mr. Sanchez showed, we're not even sure what he did on that one thing. But the government talks about, well, you can't really talk about this stuff in this case because Urbano and Hernandez are on the same side. But in the cases they cite, in Payton and Larkin, and all the cases that we find in Payton, there's always something else that this third party does. They talk about customers. There's the one case where the one woman said, well, I've got somebody waiting for this. I promised them a part of this kilo. There's always talk. There's always exchanges of money. There's always conversations about where this stuff is going. None of that is present here. It doesn't happen. Now, my client's statement, troubling. Got an individual, but maybe in a little way understanding that he's not a part of this game, so he was scared. And he was trying to help out. He was trying to say something that he thought that the listener wanted to hear. Is it your contention that confession is incredible as a matter of law? I don't believe it is, Judge. Because it doesn't jive with anything else in the case. Maybe my question was not clear. Is it your assertion that it's an error of law to rely on your client's confession? Alone, yes. What do you mean? Now, the reason we say that is, he talks about things that Sanchez doesn't talk about. And he responds to the agent who uses the words runner, who uses the word fronting, and even suggests what narcotics are being transacted. What were you dealing with? Heroin, cocaine, marijuana? Hernandez goes, yeah. Sanchez says, I didn't give anybody any heroin. I didn't give anybody any marijuana. I didn't give anybody any client. So the statement obviously becomes something my client, in his frightened condition, six o'clock in the morning, talking to a government agent in an FBI building, trying to help. And, of course, all he did was hurt himself. Because you take that statement out, then we really have nothing we can talk about, as far as the conspiracy factors are concerned. There simply is nothing here that Mr. Hernandez did that would show this sale. There was any further hope or intent to distribute. If a distributor agrees with somebody to make the delivery for him, does that count as a conspiracy? One transaction. I have to look... That would be making one crime, two crimes. The sale of the narcotics from the seller to the buyer. Hernandez is on that side. I would ask the court, and hopefully the reading of the case is today, is there has to be something further. Now, Sanchez says to Hernandez, take this to Garcia. Yeah, that's my hypothesis. I'm sorry. Then that's a problem. That's a problem for Mr. Hernandez. Because that is distribution. That's going further than the sale. Isn't it a conspiracy to distribute? As long as Mr. Urbano stays involved, I'd have to say that it was. But that's not what happened. No, just between Sanchez and Hernandez. Sanchez says to Hernandez, make this delivery for me. And Hernandez says... Considering Hernandez to be the buyer, yes, then it is a conspiracy, because there's more than two people in our felonies being committed, and there's distribution. And there's another crime beyond the sale. But that did not happen here. Thank you. Thank you. Okay, thank you, Mr. Branstader. Ms. Kim. May it please the court, Nicole Kim on behalf of the United States. In this case, when it's viewed in the light most favorable to the government, the evidence clearly established that the defendant was a knowing participant in a drug conspiracy with co defendant, Balmar Urbano, and that he used the telephone to further that conspiracy. Just to clarify something that Mr. Branstader just said. Your Honor's asked if Hernandez was given a minor role reduction at sentencing. He, in fact, was given that two point reduction that's in the sentencing transcript on page five of line 10. So he did get that minor role reduction. And the defendant was specifically charged the conspiracy with his boss, Balmar Urbano, not Jorge Sanchez, the drug supplier. And the drug conspiracy went beyond just the September 19th, 2013 meeting at the restaurant that Mr. Branstader referred to. It also included the drug transactions that occurred on September 25th and 26th. The jury also came to this conclusion in part based on the defendant's own statements, his post dress statement, where he admitted being involved in this conspiracy. He specified specifically the kinds of drugs that he was picking up on behalf of Mr. Urbano, cocaine and heroin, and provided other details of his drug relationship. When you say he admitted being a participant in the conspiracy, did he use the word conspiracy? He did not use the word conspiracy. So what did he say? He specifically told the agent that he was hired to pick up bricks, hired to pick up bricks of cocaine and heroin for $100 each, and that his job was to get it from Mr. Sanchez and deliver it to his boss, Mr. Urbano. And sometimes he was paid for it, and sometimes he was not, which also showed that he acknowledged the concept of fronting. And in that interview, he did not specifically use the word runner or identified himself as a courier, but he did acknowledge that role when he was asked by the agent. All of this evidence was corroborated at trial with intercepted conversation between the parties that showed that the defendant and Mr. Urbano worked together to obtain drugs from Mr. Sanchez. In addition to the wire intercepts, there was law enforcement surveillance, there were telephone records showing that the parties had contact during the times of the drug deals, and there was also testimony from a drug expert who talked about tools of the drug trade, tools that the defendant himself used, such as using a burner phone, acknowledging the concept of fronting, which he admitted during his post arrest, acknowledging that he understood code words that Mr. Sanchez used for cocaine. There was also sufficient evidence to support the phone counts in this case. The intercepted conversations, the telephone records, all show that the defendant used a phone, which he admitted that he used during his post arrest interview. Same phone that the law enforcement intercepted on the dates of the drug deal, September 25th and September 26th. Based on all of this, your honors, there is substantial evidence supporting the jury's verdict on count one of the drug conspiracy, counts three and four of the phone counts, and this court should leave those verdicts undisturbed. So we ask that you affirm the defendant's convictions and sentence. There are no further questions. Okay, thank you, Ms. Kim. Thank you. Mr. Branstrader, would you like another minute? Just briefly, your honor. So the record is clear. The conversations on the 25th and the 26th of September did not lead to any drug transaction. Sanchez didn't have anything. And I apologize for the failure to remember the two points off for minimum role as my remembrance of the sentencing with me arguing about whether my client's testimony was obstruction or not. I apologize for that. Not to worry. The thing that I would like to leave this court with is, under the totality of the circumstances, weighing Mr. Sanchez, weighing my client's statement and the circumstances under which it was taken, nothing that Ricardo says to that police officer about these multiple transactions and about this long involvement with Mr. Urbano is corroborated by anyone else. This was a very short time period. There was only one transaction that narcotics were actually traded. We're not supposed to do that kind of weighing on appeal. Well, I was hoping under the totality of the circumstances, you would consider it. Yeah, that's the jury's job. And we're asking the court to find that the jury made the wrong decision. Thank you. Okay. Well, thank you.